**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL CODE COUNCIL, INC.,<br><br>   500 New Jersey Avenue, N.W.,<br>   Washington, D.C. 20001,<br><br>                    *Plaintiff*,<br><br>   v.<br><br>INTERNATIONAL ASSOCIATION OF<br>PLUMBING AND MECHANICAL OFFICIALS,<br>INC. and IAPMO EVALUATION SERVICE,<br>LLC,<br><br>   4755 E. Philadelphia Street,<br>   Ontario, California 91761,<br><br>                    *Defendants*. | Case No.: 1:18-cv-00756<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff International Code Council, Inc. ("ICC") brings this action under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, that (1) in compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. ("ICBO") validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports (hereinafter "Evaluation Reports"), and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest,

including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

In the alternative, ICC brings this action under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, to remedy massive, flagrant, and willful copyright infringement of language owned by ICC in certain Evaluation Reports and Acceptance Criteria by International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO") and IAPMO Evaluation Service, LLC ("IAPMO-ES") (together, "Defendants").  ICC seeks permanent injunctive relief requiring Defendants to cease and desist from their infringement and to remove from distribution in every form, including Internet distribution, all infringing reproductions and adaptations of its copyrighted works.  In addition, where applicable, ICC seeks actual or statutory damages, disgorgement of Defendants' profits, and attorneys' fees under the Copyright Act.

For its causes of action, ICC alleges as follows:

## PARTIES

1.      Plaintiff International Code Council, Inc. ("ICC") is a non-profit corporation organized under the laws of the State of California with its principal place of business located at 500 New Jersey Avenue, NW, Washington, D.C. 20001.

2.      ICC develops model codes and standards used in the design, build, and compliance process to construct safe, sustainable, affordable, and resilient structures.  ICC's mission is to provide the highest-quality codes, standards, products, and services for all concerned with the safety and performance of the built environment.

3.      ICC came to exist in its current form in 2003, after several regional code organizations and their affiliates joined together to create one model code organization.  These

regional code organizations and their affiliates included at least ICBO, ICBO Evaluation Service, Inc. ("ICBO-ES"), International Evaluation Service, Inc. ("IES"), Southern Building Code Congress International ("SBCCI"), SBCCI Public Service Testing and Evaluation Services, Inc. ("SBCCI PST & ESI"), Building Officials and Code Administrators International ("BOCA"), BOCA Evaluation Services ("BOCA-ES"), and NES (collectively, "Legacy Organizations").

4.      Defendant IAPMO is a corporation organized under the laws of the State of California, with its principal place of business at 4755 E. Philadelphia Street, Ontario, California 91761.

5.      Defendant IAPMO develops model building codes, including the Uniform Plumbing Code and Uniform Mechanical Code.

6.      Defendant IAPMO-ES is a limited liability corporation organized under the laws of the State of California, with its principal place of business at 4755 E. Philadelphia Street, Ontario, California 91761.  On information and belief, IAPMO-ES is a subsidiary of IAPMO.

7.      Defendant IAPMO-ES creates evaluation criteria, evaluates building products, and publishes Evaluation Reports.

### JURISDICTION AND VENUE

8.      ICC's action for a declaratory judgment, 28 U.S.C. §§ 2201 *et seq*., arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.  *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent").  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

9.      ICC's copyright infringement claim, in the alternative, arises under 17 U.S.C. §§ 101, *et seq*.  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331. *See also* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled…to institute an action for any infringement of that particular right committed while he or she is the owner of it."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to…copyrights.").

10.      Venue is proper in this Court because Defendants reside or may be found in the District of Columbia.  28 U.S.C. §§ 1391(c)(2), 1400(a).

## CASE OR CONTROVERSY

11.      This case involves copyrights for two types of publications—Evaluation Reports and Acceptance Criteria.  Evaluation Reports are technical publications that evaluate components, methods, and materials for compliance with building codes and regulations.  Acceptance Criteria are technical guidelines used to evaluate whether a type of product complies with the performance features of the applicable codes and are often used to help prepare particular Evaluation Reports.

12.      Evaluation Reports and Acceptance Criteria benefit the public by ensuring that products and assessment criteria comply with the relevant building codes.  Moreover, Evaluation Reports and Acceptance Criteria lessen the burdens of government, by ensuring the use of safe building products.

13.      ES has been developing Acceptance Criteria and issuing Evaluation Reports since at least as early as 2003.  Many of these Evaluation Reports and Acceptance Criteria were timely registered with the U.S. Copyright Office.

14.      From at least 1977 through 2003, the Legacy Organizations, including BOCA, ICBO, ICBO-ES, IES, SBCCI PST & ESI, BOCA-ES, and/or NES, authored, wrote, created, or

otherwise developed Evaluation Reports and Acceptance Criteria.  Many of these Evaluation Reports and Acceptance Criteria were timely registered with the U.S. Copyright Office.

15.     At the time of the combination described in paragraph 3, and the corporate evolution described further in paragraphs 42 through 58, the Legacy Organizations and ICC intended that a separate non-profit ICC-ES corporation, in which ICC would be the sole statutory member, would assume all of the evaluation activities conducted by BOCA, ICBO, ICBO-ES, IES, NES, and SBCCI PST & ESI and would be the owner of the copyrights in these Legacy Organizations' Evaluation Reports and Acceptance Criteria.

16.     On or about October 19, 1992, NES, an Illinois non-profit corporation, was formed as a tax exempt organization pursuant to Section 501(c)(4) of the Internal Revenue Code.  The purposes for which NES was formed included charitable and civic purposes, such as the lessening of burdens of government through the performance of certain services for the benefit of federal, state, and local governments in connection with the administration of building laws and regulations.  As described in paragraphs 42 through 58, NES eventually was transformed into ES.

17.     On or about January 31, 2003, ICBO, BOCA, and SBCCI donated, granted, transferred, assigned, and conveyed to ICC all of their right, title and interest in and to, *inter alia*, proprietary information including "original works of authorship, copyrights, trademarks, trade names, logos, trade secrets, patents or other intellectual property rights," and including the Evaluation Reports and Acceptance Criteria listed in paragraph 59 below.  Ex. 1 at Section D(e). A true and correct copy of the Restricted Donation Agreement is attached as **Exhibit 1**.

18.     On or about January 31, 2003, ICC intended to and did donate and assign all right, title, and interest in its Evaluation Reports and Acceptance Criteria as well as the copyrights and copyright registrations thereto, to NES ("Assignment").  On or about February 9, 2018, ICC

executed a confirmatory assignment, memorializing that on or about January 31, 2003, ICC donated and assigned all right, title, and interest in its Evaluation Reports and Acceptance Criteria and the copyrights and copyright registrations thereto to NES ("Confirmatory Assignment").  A true and correct copy of the Confirmatory Assignment is attached as **Exhibit 2**.

19.     As described in paragraphs 42 through 58, NES's corporate name and structure was changed several times since 2003, most recently to create the present-day ES.

20.     On January 13, 2016, ES filed an action for copyright infringement in this Court against Defendants for illegally copying certain Evaluation Reports and Acceptance Criteria and was assigned Civil Action No. 1:16-cv-54 ("Related Litigation").

21.     On February 27, 2018, this Court, with Defendants' consent and for "good cause," granted ES leave to file a Second Amended Complaint.  Related Litigation, ECF No. 61.

22.     On March 1, 2018, ES filed a Second Amended Complaint in the Related Litigation alleging that Defendants engaged in a willful and widespread practice of copyright infringement relating to certain Evaluation Reports and Acceptance Criteria, including allegations that Defendants infringed certain copyrighted works authored by the Legacy Organizations ("Legacy Works").  Related Litigation, ECF No. 62.

23.     On March 22, 2018, Defendants informed ES that they intended to file a motion to dismiss certain claims related to copyrighted works authored by the Legacy Organizations on the purported ground that ES does not own the copyrights in those works.

24.     On March 26, 2018, ES identified to Defendants a number of documents evidencing the substance of the corporate restructuring that eventually resulted, *inter alia*, in ES' ownership of the Legacy Works.  The disclosed documents included the Confirmatory Assignment memorializing ICC's intent to donate and assign, and ICC's actual donation and

assignment, to NES on or about January 31, 2003 of all right, title, and interest in and to all of the copyrights and copyright registrations for the Evaluation Reports and Acceptance Criteria authored by the Legacy Organizations.

25.     On March 27, 2018, Defendants filed a Partial Motion to Dismiss in the Related Litigation (ECF No. 63) contending that the Assignment was invalid and that ICC did not effectively donate, transfer, or assign all right, title, and interest in and to its copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria to NES (now ES).

26.     An immediate, real and justiciable controversy exists between the parties as to whether, in compliance with the Copyright Act, 17 U.S.C. §§ 101, *et seq.* ICC validly and effectively donated, transferred, and assigned all of its interests in, and the copyrights and copyright registrations for, its Evaluation Reports and Acceptance Criteria to NES so that ES now owns these documents and their copyrights and registrations.

27.     With this action, ICC seeks a declaratory judgment that (1) in compliance with the Copyright Act, on or about January 31, 2003, ICBO validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to NES, which eventually was transformed into ES, all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

28.     In the event that this Court finds that ICC did not validly and effectively donate, transfer, and assign all right, title and interest in the Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, ICC is the owner of all right, title, and interest in and to those Evaluation Reports and Acceptance Criteria.   ICC therefore asserts a claim, in the alternative, to enjoin Defendants' widespread unlawful behavior and to recover ICC's damages attributable to Defendants' copyright infringement relating to certain Evaluation Reports and Acceptance Criteria owned by ICC.

## THE COPYRIGHT ACT

29.     "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…from which they can be perceived, reproduced, or otherwise communicated."  17 U.S.C. § 102(a).

30.     A copyright confers exclusive rights on its owner, including the sole ability to reproduce or distribute the copyrighted work or prepare derivative works.  *See, e.g.*, *id.* § 106.

31.     Copyright "vests initially in the author or authors of the work."  *Id.* § 201(a).

32.     An employer's authorship includes works generated by employees within the scope of their employment.  *Id.* § 101 (defining "work made for hire").

33.     If a work is registered with the U.S. Copyright Office "before or within five years after first publication of the work," then in any judicial proceedings the certificate of registration shall constitute "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  *Id.* § 410(c).

34.     The "ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law."  *Id.* § 201(d)(1)–(2).

8

35.     Other than by operation of law, a copyright owner may transfer its rights of ownership through a written and signed "instrument of conveyance, or a note or memorandum of the transfer." *Id.* § 204(a).

36.     Any person or entity that violates any of a copyright owner's exclusive rights infringes the copyright. *Id.* § 501.

37.     The owner of a copyright may enforce its rights against infringers by filing for an injunction and is entitled to receive actual damages and the infringer's additional profits. *Id.* §§ 502 (injunction), 504 (actual damages, profits).

38.     In certain circumstances, the owner of a copyright "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work." *Id.* § 504(c)(1).

39.     The owner of a registered copyright may seek statutory damages for infringement of any published work registered "within three months after the first publication of the work" or for "any infringement of copyright commenced" after the effective date of its registration. *Id.* § 412(2).

40.     In instances where "the court finds[] that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to no more than $150,000" per work. *Id.* § 504(c)(2).

41.     The court may award full costs, including a reasonable attorneys' fees, to the copyright owner for any published work registered "within three months after the first publication of the work" or for "any infringement of copyright commenced" after the effective date of its registration. *Id.* §§ 412, 505.

## FACTUAL ALLEGATIONS
### Copyright Assignment

42.     From at least 1977, ICBO and ICBO-ES regularly published Evaluation Reports and Acceptance Criteria in a monthly Serial Publication called *Research Reports and Evaluation Reports* (hereinafter "*Serial Publications*").  The *Serial Publications* were registered with the U.S. Copyright Office in the ordinary course of business.

43.     Through and following the combinations of the Legacy Organizations in 2003 described in paragraph 3, first ICC and then NES, respectively, became the lawful owner of certain copyrights previously owned by ICBO.

44.     On or about January 31, 2003, ICBO intended to and did donate, grant, transfer, assign, and convey to ICC through the Restricted Donation Agreement (**Exhibit 1**), all of ICBO's right, title, and interest in, and its copyrights and copyright registrations for, its Evaluation Reports (also called Research Reports) and Acceptance Criteria.

45.     On or about January 31, 2003, ICBO intended that the entity that became ES would assume all the evaluation activities then conducted by ICBO and the other Legacy Organizations.

46.     On or about January 31, 2003, ICC donated and assigned all right, title, and interest in and to its copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria to non-profit NES.

47.     The intent for ICC to donate and assign ICC's right, title, and interest in and to the copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria authored or created by the Legacy Organizations to the entity that became ES is evidenced by the information statement and other materials distributed to the various members of the Legacy Organizations.  True and correct copies of the Information Statement distributed to members of the Legacy Organizations, along with a letter from John Noose to the newly formed ICC-ES

Evaluation Committee (dated March 7, 2003) regarding committee orientation, are attached as **Exhibit 3**.

48.　　Separately, on or about January 31, 2003, certain Legacy Organizations that previously conducted and issued Evaluation Reports and Acceptance Criteria each donated and assigned their Evaluation Reports and Acceptance Criteria and the copyrights thereto to NES.

49.　　On or about May 1, 2003, NES changed its name to ICC Evaluation Services, Inc. ICC Evaluation Services, Inc. was an Illinois tax exempt organization pursuant to Section 501(c)(4) of the Internal Revenue Code.　A true and correct copy of NES's Articles of Incorporation and the amendments thereto are attached as **Exhibit 4**.

50.　　On or about January 14, 2009, ICC Evaluation Services, Inc. changed its corporate name to ICC Evaluation Service, Inc.　A true and correct copy of the Articles of Amendment effectuating the name change is attached as **Exhibit 5**.

51.　　On or about July 2010, ICC Evaluation Service, Inc. transferred "all intellectual property, registered and unregistered, patents, inventions, trade secrets, processes, proprietary rights, proprietary knowledge, know-how, design, archives, technology, software, URLs, domain names, web sites including content and coding, trademarks, names, service marks, trade names, copyrights, symbols, logos, drawings, franchises and permits, and all applications therefor, registrations thereof and licenses, sublicenses or agreements in respect thereof, that Seller owns or has the right to use or to which Seller is a party and all filings, registrations or issuances of any of the foregoing with or by any federal, state, local or foreign Governmental Authority and all related goodwill" to ES Acquisition Co., LLC.　A true and correct copy of the Asset Purchase Agreement is attached as **Exhibit 6** at Section 1.1(e).

52.     After transferring its intellectual property to ES Acquisition Co., LLC, ICC

Evaluation Service, Inc. changed its corporate name to ICC ES Holdings, Inc.  On or about July

11, 2015, ICC-ES Holdings, Inc. dissolved.

53.     ES Acquisition Co., LLC was formed on or about March 9, 2010 as a Delaware

Limited Liability Company.  ES Acquisition Co., LLC, was organized "exclusively to (a) lessen

the burdens of Government through the performance of certain services for the benefit of federal,

state or local governments in connection with the administration of building law and regulation;

(b) undertake activities to further the tax-exempt purposes of ICC."  Ex. 7 Section 4.  Moreover,

ES Acquisition Co., LLC was prohibited from engaging in "any activities which are not permitted

for a Company that is exempt from federal income tax under section 501(c)(6) of the United States

Internal Revenue Code of 1986."  Ex. 7 Section 6.  A true and correct copy of the Limited Liability

Company Operating Agreement of ES Acquisition Co., LLC is attached as **Exhibit 7**.

54.     On or about August 10, 2010, ES Acquisition Co., LLC changed its corporate

name to ICC Evaluation Service, LLC, the plaintiff in the Related Litigation.  A true and correct

copy of the Limited Liability Company Application For Registration Certificate of Amendment

is attached as **Exhibit 8**.

55.     ICC Evaluation Service, LLC, also known as ES and the plaintiff in the Related

Litigation, was likewise organized "exclusively to (a) lessen the burdens of Government through

the performance of certain services for the benefit of federal, state or local governments in

connection with the administration of building law and regulation; (b) undertake activities to

further the tax-exempt purposes of ICC."  Ex. 9 Section 4.  Moreover, ES was prohibited from

engaging in "any activities which are not permitted for a Company that is exempt from federal

income tax under section 501(c)(6) of the United States Internal Revenue Code of 1986."  Ex. 9

Section 6.  A true and correct copy of the Amended and Restated Limited Liability Company Agreement of ICC Evaluation Service, LLC is attached as **Exhibit 9**.

56.     By operation of law or by transfer or assignment, ICC owned the copyrights and copyright registrations in the Evaluation Reports and Acceptance Criteria previously owned ICBO at the time ICC assigned the copyrights and copyright registrations in ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003.

57.     As the result of ICC's intent to donate and assign and actual valid and effective donation and assignment of its right, title, and interest in, including copyrights and copyright registrations for, the Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, and the subsequent restructuring of NES described above, ES owns all interests in and the copyrights and copyright registrations to all of ICC's Evaluation Reports and Acceptance Criteria, including but not limited to the Evaluation Reports and Acceptance Criteria discussed herein in paragraph 62. *See also* Ex. 3.

58.     The Confirmatory Assignment (**Exhibit 2**) memorialized ICC's intent to donate and assign and ICC's actual donation and assignment of ownership of the copyrights in the Evaluation Reports and Acceptance Criteria previously owned by ICC to NES on or about January 31, 2003.

59.     Defendants have reproduced and/or prepared derivatives of, in substantial and significant part, at least the following ICBO Evaluation Reports and original Acceptance Criteria, referred to collectively as the "Legacy Works" and described in more detail below:

a.      ICBO-ES Evaluation Report No. ER-3568, registration numbers TX 192-485, TX 229-194, TX 229-195, TX 236-722, or TX 361-966 and TX 2-480-713, TX 2-481-273, or TX 2-484-075;

b.      ICBO-ES Evaluation Report No. ER-3899, registration numbers TX 2-998-540 and TX 5-025-522;

c.      ICBO-ES Evaluation Report No. ER-3967, registration numbers TX 970-147 or TX 970-148; TX 3-378-214; TX 4-348-625; and TX 5-052-306, TX 5-061-134, or TX 5-082-194;

d.      ICBO-ES Evaluation Report No. ER-5437, registration numbers TX 4-983-880 or TX 4-983-881 and TX 5-092-977;

e.      ICBO-ES Evaluation Report No. PFC-5501, registration number TX 5-028-820;

f.      ICBO-ES Acceptance Criteria No. 11, registration number TX 2-021-904, TX 2-058-819, or TX 2-056-402;

g.      ICBO-ES Acceptance Criteria No. 118, registration numbers TX 4-328-443, TX 4-348-625, or TX 4-349-102 and TX 5-025-522 or TX 5-082-608; and

h.      ICBO-ES Acceptance Criteria for Precast Stoner Veneer, registration numbers TX 2-358-252, TX 2-484-245, or TX 2-484-074; TX 3-031-656, TX 3-067-183, or TX 3-069-835.

60.     Defendants do not own or claim to own any of the copyrighted Legacy Works.

## Copyright Infringement

61.     In the event that the Assignment was invalid, ICC was and is the copyright owner as to the Legacy Works by operation of law or by transfer or assignment and has been at all relevant times the owner of all rights and interests in the Legacy Works.  17 U.S.C. §§ 101, *et seq.*

62.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by reproducing, in substantial and significant part, and/or preparing derivatives of the Legacy Works, without authorization.

63.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by reproducing in their entirety copies of the Legacy Works for internal circulation without authorization.

64.     As a matter of practice and/or policy, Defendants, without authorization from ICC, reproduced copies of the Legacy Works, *inter alia*, by converting PDF files of the Legacy Works and/or works that contain language from the Legacy Works into its digital files that then were saved to Defendants' Laserfiche files or otherwise.

65.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by distributing, and/or displaying reproductions and/or derivatives of the Legacy Works without authorization or consent, and for commercial gain.

66.     ICC has not authorized or licensed Defendants to reproduce its copyrighted Legacy Works, to prepare derivative works based upon its copyrighted Legacy Works, or to distribute copies or derivatives of the Legacy Works internally or to the public.

67.     Defendants acted willfully and/or with reckless disregard for and/or willful blindness to ICC's rights in the Legacy Works when they distributed, reproduced, prepared derivatives of and/or displayed the Legacy Works without authorization, in violation of Copyright law and Defendants' own Copyright Policy, which, for example, prohibits the creation of derivative works and the creation of copies of any copyrighted work.

68.     Upon information and belief, Defendants' Copyright Policy, adopted in November 2015, memorializes Defendants' previously unwritten policies.

69.     Defendants have used, infringed upon, distributed and otherwise profited from, and, unless enjoined by this Court, will in the future use, infringe upon, distribute, and otherwise profit from ICC's Legacy Works.

70.     As a result of Defendants' wrongful conduct, ICC has suffered damages and, unless this Court enjoins Defendants' wrongful conduct, ICC will continue to suffer damages.

### THE COPYRIGHTED WORKS

71.     On or about November 2008, ES published ES Evaluation Report No. ESR-1215 (valid from November 1, 2008 to November 1, 2009), assessing Eldorado Stone®, Eldorado Brick® and Eldorado Adobe® Veneers and Eldorado Accents, for compliance with the 2006 versions of both the International Building and International Residential Codes.

72.     ESR-1215 is based on and/or includes language from Legacy Work ICBO-ES Evaluation Report No. ER-3568.

73.     Effective February 16, March 28, April 30, or May 2, 1979, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3568 (issued February 1979), under copyright registration number TX 192-485, TX 229-194, TX 229-195, TX 236-722, or TX 361-966.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 10–14**.

74.     Effective January 25, 1989, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3568 (issued September 1988), under copyright registration number TX 2-480-713, TX 2-481-273, or TX 2-484-075.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 15–17**.

75.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation

Report No. ER-3568, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 337," "UES Evaluation Report No. 353," "UES Evaluation Report No. 377," and "UES Evaluation Report No. 386."

76.     On or about February 2013, ES published ES Evaluation Report No. ESR-1607 (valid from February 1, 2013 to February 1, 2015), assessing Western 1-Kote Exterior Stucco System, Dryvit Commercial Cement Plaster (CCP) System, Insulex Continuous Insulation Stucco System, Ashgove One-Coat Stucco System, and Sto Powerwall™ Stucco System, for compliance with the 1997 Uniform Building Code and the 2006, 2009, and 2012 versions of both the International Building and International Residential Codes.

77.     ESR-1607 is based on and/or includes language from ICBO-ES Evaluation Report No. ER-3899.

78.     Effective January 22, 1991, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3899 (issued August 1990), under copyright registration number TX 2-998-540.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 18**.

79.     Effective November 29, 1999, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3899 (reissued August 1, 1999), under copyright registration number TX 5-025-522.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 19**.

80.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of multiple versions of ICBO-ES Evaluation Report No. ER-3899, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 382."

81.     On or about June 2013, ES published ES Evaluation Report No. ESR-2448 (valid from May 1, 2013 to May 1, 2015), assessing Hebel Autoclaved Aerated Concrete (AAC) Panels and Hebel Thin Bed Mortar for compliance with several codes, including the 2006 and 2009 versions of the International Building Code.

82.     ESR-2448 is based on and/or includes language from ICBO-ES Evaluation Report No. PFC-5501.

83.     Effective November 29, 1999, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. PFC-5501 (issued June 1, 1999), under copyright registration number TX 5-028-820.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 20**.

84.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation Report No. PFC-5501, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 400."

85.     On or about April 2013, ES published ES Evaluation Report No. ESR-2481 (valid from April 1, 2013 to May 1, 2014), assessing Taperlock Reinforcing Bar Mechanical Splice Couplers for compliance with several codes, including the 2006, 2009, and 2012 versions of the International Building Code.

86.     ESR-2481 is based on and/or includes language from ICBO-ES Evaluation Report No. 3967.

87.     Effective September 2, 1982, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (issued June 1982), under copyright

registration number TX 970-147 or TX 970-148.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 21 and 22**.

88.     Effective August 7, 1992, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued March 1992), under copyright registration number TX 3-378-214.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 23**.

89.     Effective October 8, 1996, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued July 1, 1996), under copyright registration number TX 4-348-625.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 24**.

90.     Effective January 27 or April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued October 1, 1999), under copyright registration number TX 5-052-306, TX 5-061-134, or TX 5-082-194.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 25–27**.

91.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation Report No. ER-3967, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 319."

92.     On or about February 2012, ES published ES Evaluation Report No. ESR-2968 (valid from February 1, 2012 to March 1, 2014), assessing UltraFitDS® and AsureR® Loose-Fill Glass Fiber Insulation for compliance with several codes, including the 2009 versions of both the International Building and International Residential Codes.

93.     ESR-2968 is based on and/or includes language from ICBO-ES Evaluation Report No. ER-5437.

94.     Effective May 28, 1999, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-5437 (issued January 1, 1999), under copyright registration number TX 4-983-880 or TX 4-983-881.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 28 and 29**.

95.     Effective April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-5437 (reissued January 1, 2000), under copyright registration number TX 5-092-977.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 30**.

96.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation Report No. ER-5437, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 339."

97.     On or about January 2001, ICBO-ES published ICBO-ES Acceptance Criteria No. 11 for testing and evaluating cementitious exterior wall coatings for compliance with the 1997 Uniform Building Code and the 2000 International Building and International Residential Codes.

98.     ES Acceptance Criteria No. 11 is based on and/or includes language from ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings.

99.     Effective March 19, 1987, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings (approved October 1986), under copyright registration number TX 2-021-904, TX 2-058-819, or TX 2-056-

402.   True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 31–33**.

100.   Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of Legacy Work ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 382 Revised 11/30/2015."

101.   On or about December 2007, ES published ES Acceptance Criteria No. 51 for testing and evaluating precast stone veneer for compliance with the 2006 International Building Code, 2006 International Residential Code, 1999 National Building Code, and 1997 Uniform Building Code.

102.   ES Acceptance Criteria No. 51 is based on and/or includes language from ICBO-ES Acceptance Criteria for Precast Stoner Veneer.

103.   On or about June 1988, ICBO-ES published ICBO-ES Acceptance Criteria for Precast Stone Veneer for testing and evaluating precast stone veneer for compliance with Chapter 30 of the Uniform Building Code.

104.   Effective August 17, 1988 or January 25, 1989, ICBO registered with the Copyright Office its copyright in ICBO-ES Acceptance Criteria for Precast Stone Veneer (approved June 1988), under copyright registration number TX 2-358-252, TX 2-484-245, or TX 2-484-074. True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 34–36**.

105.   Effective March 20, April 17, or May 28, 1991, ICBO registered with the Copyright Office its copyright in ICBO-ES Acceptance Criteria for Precast Stone Veneer (corrected February 1991), under copyright registration number TX 3-031-656, TX 3-067-183,

or TX 3-069-835. True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 37–39**.

106.    Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Acceptance Criteria for Precast Stone Veneer and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 337 Revised 11/24/2015," "UES Evaluation Report No. 353 Revised 11/24/2015," "UES Evaluation Report No. 377 Revised 11/24/2015," and "UES Evaluation Report No. 386 Revised 11/24/2015."

107.    In 2013, ES authored, but never published, Proposed Acceptance Criteria Methods of Shear Transfer Which are Alternatives to Welded Stud Shear Connectors AC 453.

108.    ES Proposed Acceptance Criteria No. 453 is based on and/or includes language from ICBO-ES Acceptance Criteria No. 118.

109.    Effective August 19, October 7, or October 8, 1996, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria No. 118 (approved July 1996), under copyright registration number TX 4-328-443, TX 4-348-625, or TX 4-349-102.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 40, 24, 41**.

110.    Effective November 29, 1999 or April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria No. 118 (editorially revised August 1999), under copyright registration number TX 5-025-522 or TX 5-082-608.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 19 and 42**.

111.    Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Acceptance Criteria No. 118, and are or have been publishing and distributing it on the Internet as "IAPMO-ES Evaluation Criteria 023."

## COUNT I
### Declaratory Judgment as to Validity of Assignments Under the Copyright Act
### 17 U.S.C. § 204

112.    Plaintiff ICC repeats and re-alleges the allegations contained in paragraphs 1–8, 10–27, and 29–60, as if set forth herein.

113.    In the Related Litigation, Defendants have asserted that ES is not the owner of the copyrights in Legacy Works identified in paragraph 59 above because certain copyright registrations attached to ES's Second Amended Complaint show ICBO as the author and copyright claimant.

114.    In the Related Litigation, Defendants have claimed that any alleged donation or transfer or assignment eventually resulting in ES as the beneficial owner of the copyrights in these Legacy Works (as evidenced, *e.g.*, the Legacy Organizations' intent, Restricted Donation Agreement, and Confirmatory Assignment), is invalid and therefore not effective to transfer all right, title and interest in and to the Evaluation Reports and Acceptance Criteria at issue. Defendants therefore argue that ES is not the owner of the copyrights in these Legacy Works.

115.    There is no factual or legal support or basis for Defendants' challenge to the assignments and transfers from ICBO to ICC or from ICC to NES, which eventually was transformed into ES.

116.    ICC intended to donate and assign, and did donate and assign all right, title, and interest in and to all of ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003.

117.    ICC memorialized its intention to donate and assign, and the actual donation and assignment of, all right, title and interest in and to all of ICC's Evaluation Reports and Acceptance Criteria to NES, in the written and executed Confirmatory Assignment.

118.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., International Code Council, Inc. ("ICC") requests that this Court enter a declaratory judgment that (1) in compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. ("ICBO") validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

## COUNT II
### Violation of the Copyright Act, 17 U.S.C. §§ 101, et seq.

119.    Plaintiff ICC repeats and re-alleges each and every allegation contained in paragraphs 1–7, 9–14, 17, 20–25, 28–42, 44, and 59–1111, as if fully set forth herein.

120.    In the alternative, if this Court finds that ICC did not validly and effectively donate, transfer, and assign all right, title, and interest in and to ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, ICC is the owner of the copyrights in those Legacy Works including those identified in paragraph 59 above, and maintains exclusive rights, *inter alia*, to distribute and reproduce the Legacy Works and create works from those Legacy Works.

121.    Defendants have infringed and will continue to infringe ICC's copyrights in the Legacy Works by copying, producing, distributing, and placing in the market products that are, in substantial part, copies of, or derived from, ICC's copyrighted Legacy Works, without ICC's permission or license.

122.    In these circumstances, the Copyright Act entitles ICC to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them from engaging in any present or future acts in violation of the copyright laws.

123.    The Copyright Act further entitles ICC to recover from Defendants actual damages it has sustained, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement alleged above.

124.    The Copyright Act also entitles ICC to statutory damages in lieu of actual damages, plus attorneys' fees, at least as to Defendants' infringement of Legacy Works ICBO-ES Evaluation Report Nos. ER-3568, ER-3899, ER-3967, ER-5437, and PFC-5501, and ICBO-ES Acceptance Criteria Nos. 11, 118, and ICBO-ES Acceptance Criteria for Precast Stoner Veneer.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff International Code Council, Inc. requests judgment against Defendants International Association of Plumbing and Mechanical Officials, Inc. and the IAPMO Evaluation Service, LLC and seeks relief, as follows:

A.    That judgment be entered for ICC and against Defendants on Count I; and

B.    That this Court issue a declaratory judgment that:

    i.    In compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC;

    ii.    In compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO, including those identified in paragraph 59 above; and

C.    That this Court grant any such other and further relief as it deems just and proper.

26

In the alternative, if the Court denies the relief sought in Paragraphs A–C, Plaintiff International Code Council, Inc. requests judgment against Defendants International Association of Plumbing and Mechanical Officials, Inc. and the IAPMO Evaluation Service, LLC and seeks relief, as follows:

D.      That judgment be entered for ICC and against Defendants on Count II;

E.      That this Court find that Defendants infringed ICC's copyrights in the Legacy Works identified in paragraph 59 above;

F.      That this Court find that Defendants' infringement of ICC's copyrighted Legacy Works was willful;

G.      That this Court find that Defendants will continue to infringe ICC's copyrights in the Legacy Works unless enjoined from doing so;

H.      That Defendants, their officers, directors, agents, employees, affiliates, subsidiaries, and all other persons acting in concert with them, be permanently enjoined from directly or indirectly infringing ICC's copyrights in the Legacy Works, and any other works authored by ICC; from marketing, offering, selling, disposing of, licensing, leasing, transferring, displacing, advertising, reproducing, developing, or manufacturing any works derived or copied from the Legacy Works, or any other works authored by ICC; and, from participating or assisting in any such activity;

I.      That Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for their other violations of law;

J.      That ICC be awarded its actual damages and any profits attributable to Defendants' infringements of ICC's copyrights in the Legacy Works, and, where applicable, statutory damages for infringements of ICC's copyrighted Legacy Works;

K.      That Defendants be required to deliver for destruction, all copies, reproductions, or derivative works of offending works produced by Defendants based on the Legacy Works, all advertising and other promotional material for Defendants' products based on the Legacy Works or infringing copies of them, and all artwork and other promotional materials in Defendants' possession or custody or under their control relating to the copying or reproduction in whole or in part of the Legacy Works;

L.      That Defendants be required to delete permanently from Defendants' computers and information technology systems all electronic copies of the offending works;

M.      That Defendants be required to delete permanently, from any website that they own or control, all copies or reproductions of the offending works;

N.      That ICC be awarded reasonable attorneys' fees and costs incurred in connection with this action, including, but not limited to, reasonable attorneys' fees and costs incurred in connection with Defendants' infringement of ICC's copyrights;

O.      That a jury hear ICC's claims; and,

P.      That this Court grant any such other and further relief as it deems just and proper.

Dated: April 3, 2018

Respectfully submitted,

*/s/ J. Kevin Fee*
J. Kevin Fee (D.C. Bar No. 494016)
James Hamilton (D.C. Bar No. 108928)
Raechel Keay Kummer (D.C. Bar No. 991999)
Clara Kollm (D.C. Bar No. 1029841)
Jane W. Wise (D.C. Bar No. 1027769)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
(202) 739-3000
(202) 739-3001 (Facsimile)
kevin.fee@morganlewis.com
james.hamilton@morganlewis.com
raechel.kummer@morganlewis.com
clara.kolm@morganlewis.com
jane.wise@morganlewis.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL CODE COUNCIL, INC.,

    500 New Jersey Avenue, N.W.,
    Washington, D.C. 20001,

                *Plaintiff*,

        v.

INTERNATIONAL ASSOCIATION OF
PLUMBING AND MECHANICAL OFFICIALS,
INC. and IAPMO EVALUATION SERVICE,
LLC,

    4755 E. Philadelphia Street,
    Ontario, California 91761,

                *Defendants*.

Case No.: 1:18-cv-00756

**JURY DEMAND**

## COMPLAINT

Plaintiff International Code Council, Inc. ("ICC") brings this action under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, seeking a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, that (1) in compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. ("ICBO") validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports (hereinafter "Evaluation Reports"), and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest,

1

including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

In the alternative, ICC brings this action under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, to remedy massive, flagrant, and willful copyright infringement of language owned by ICC in certain Evaluation Reports and Acceptance Criteria by International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO") and IAPMO Evaluation Service, LLC ("IAPMO-ES") (together, "Defendants").  ICC seeks permanent injunctive relief requiring Defendants to cease and desist from their infringement and to remove from distribution in every form, including Internet distribution, all infringing reproductions and adaptations of its copyrighted works.  In addition, where applicable, ICC seeks actual or statutory damages, disgorgement of Defendants' profits, and attorneys' fees under the Copyright Act.

For its causes of action, ICC alleges as follows:

## PARTIES

1.      Plaintiff International Code Council, Inc. ("ICC") is a non-profit corporation organized under the laws of the State of California with its principal place of business located at 500 New Jersey Avenue, NW, Washington, D.C. 20001.

2.      ICC develops model codes and standards used in the design, build, and compliance process to construct safe, sustainable, affordable, and resilient structures.  ICC's mission is to provide the highest-quality codes, standards, products, and services for all concerned with the safety and performance of the built environment.

3.      ICC came to exist in its current form in 2003, after several regional code organizations and their affiliates joined together to create one model code organization.  These

regional code organizations and their affiliates included at least ICBO, ICBO Evaluation Service, Inc. ("ICBO-ES"), International Evaluation Service, Inc. ("IES"), Southern Building Code Congress International ("SBCCI"), SBCCI Public Service Testing and Evaluation Services, Inc. ("SBCCI PST & ESI"), Building Officials and Code Administrators International ("BOCA"), BOCA Evaluation Services ("BOCA-ES"), and NES (collectively, "Legacy Organizations").

4.      Defendant IAPMO is a corporation organized under the laws of the State of California, with its principal place of business at 4755 E. Philadelphia Street, Ontario, California 91761.

5.      Defendant IAPMO develops model building codes, including the Uniform Plumbing Code and Uniform Mechanical Code.

6.      Defendant IAPMO-ES is a limited liability corporation organized under the laws of the State of California, with its principal place of business at 4755 E. Philadelphia Street, Ontario, California 91761.  On information and belief, IAPMO-ES is a subsidiary of IAPMO.

7.      Defendant IAPMO-ES creates evaluation criteria, evaluates building products, and publishes Evaluation Reports.

## JURISDICTION AND VENUE

8.      ICC's action for a declaratory judgment, 28 U.S.C. §§ 2201 *et seq*., arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq.  See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent").  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

9.      ICC's copyright infringement claim, in the alternative, arises under 17 U.S.C. §§ 101, *et seq.*  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331. *See also* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled…to institute an action for any infringement of that particular right committed while he or she is the owner of it."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to…copyrights.").

10.     Venue is proper in this Court because Defendants reside or may be found in the District of Columbia.  28 U.S.C. §§ 1391(c)(2), 1400(a).

## CASE OR CONTROVERSY

11.     This case involves copyrights for two types of publications—Evaluation Reports and Acceptance Criteria.  Evaluation Reports are technical publications that evaluate components, methods, and materials for compliance with building codes and regulations.  Acceptance Criteria are technical guidelines used to evaluate whether a type of product complies with the performance features of the applicable codes and are often used to help prepare particular Evaluation Reports.

12.     Evaluation Reports and Acceptance Criteria benefit the public by ensuring that products and assessment criteria comply with the relevant building codes.  Moreover, Evaluation Reports and Acceptance Criteria lessen the burdens of government, by ensuring the use of safe building products.

13.     ES has been developing Acceptance Criteria and issuing Evaluation Reports since at least as early as 2003.  Many of these Evaluation Reports and Acceptance Criteria were timely registered with the U.S. Copyright Office.

14.     From at least 1977 through 2003, the Legacy Organizations, including BOCA, ICBO, ICBO-ES, IES, SBCCI PST & ESI, BOCA-ES, and/or NES, authored, wrote, created, or

4

otherwise developed Evaluation Reports and Acceptance Criteria.  Many of these Evaluation Reports and Acceptance Criteria were timely registered with the U.S. Copyright Office.

15.     At the time of the combination described in paragraph 3, and the corporate evolution described further in paragraphs 42 through 58, the Legacy Organizations and ICC intended that a separate non-profit ICC-ES corporation, in which ICC would be the sole statutory member, would assume all of the evaluation activities conducted by BOCA, ICBO, ICBO-ES, IES, NES, and SBCCI PST & ESI and would be the owner of the copyrights in these Legacy Organizations' Evaluation Reports and Acceptance Criteria.

16.     On or about October 19, 1992, NES, an Illinois non-profit corporation, was formed as a tax exempt organization pursuant to Section 501(c)(4) of the Internal Revenue Code.  The purposes for which NES was formed included charitable and civic purposes, such as the lessening of burdens of government through the performance of certain services for the benefit of federal, state, and local governments in connection with the administration of building laws and regulations.  As described in paragraphs 42 through 58, NES eventually was transformed into ES.

17.     On or about January 31, 2003, ICBO, BOCA, and SBCCI donated, granted, transferred, assigned, and conveyed to ICC all of their right, title and interest in and to, *inter alia*, proprietary information including "original works of authorship, copyrights, trademarks, trade names, logos, trade secrets, patents or other intellectual property rights," and including the Evaluation Reports and Acceptance Criteria listed in paragraph 59 below.  Ex. 1 at Section D(e). A true and correct copy of the Restricted Donation Agreement is attached as **<u>Exhibit 1</u>**.

18.     On or about January 31, 2003, ICC intended to and did donate and assign all right, title, and interest in its Evaluation Reports and Acceptance Criteria as well as the copyrights and copyright registrations thereto, to NES ("Assignment").  On or about February 9, 2018, ICC

executed a confirmatory assignment, memorializing that on or about January 31, 2003, ICC donated and assigned all right, title, and interest in its Evaluation Reports and Acceptance Criteria and the copyrights and copyright registrations thereto to NES ("Confirmatory Assignment").  A true and correct copy of the Confirmatory Assignment is attached as **Exhibit 2**.

19.     As described in paragraphs 42 through 58, NES's corporate name and structure was changed several times since 2003, most recently to create the present-day ES.

20.     On January 13, 2016, ES filed an action for copyright infringement in this Court against Defendants for illegally copying certain Evaluation Reports and Acceptance Criteria and was assigned Civil Action No. 1:16-cv-54 ("Related Litigation").

21.     On February 27, 2018, this Court, with Defendants' consent and for "good cause," granted ES leave to file a Second Amended Complaint.  Related Litigation, ECF No. 61.

22.     On March 1, 2018, ES filed a Second Amended Complaint in the Related Litigation alleging that Defendants engaged in a willful and widespread practice of copyright infringement relating to certain Evaluation Reports and Acceptance Criteria, including allegations that Defendants infringed certain copyrighted works authored by the Legacy Organizations ("Legacy Works").  Related Litigation, ECF No. 62.

23.     On March 22, 2018, Defendants informed ES that they intended to file a motion to dismiss certain claims related to copyrighted works authored by the Legacy Organizations on the purported ground that ES does not own the copyrights in those works.

24.     On March 26, 2018, ES identified to Defendants a number of documents evidencing the substance of the corporate restructuring that eventually resulted, *inter alia*, in ES' ownership of the Legacy Works.   The disclosed documents included the Confirmatory Assignment memorializing ICC's intent to donate and assign, and ICC's actual donation and

assignment, to NES on or about January 31, 2003 of all right, title, and interest in and to all of the copyrights and copyright registrations for the Evaluation Reports and Acceptance Criteria authored by the Legacy Organizations.

25.     On March 27, 2018, Defendants filed a Partial Motion to Dismiss in the Related Litigation (ECF No. 63) contending that the Assignment was invalid and that ICC did not effectively donate, transfer, or assign all right, title, and interest in and to its copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria to NES (now ES).

26.     An immediate, real and justiciable controversy exists between the parties as to whether, in compliance with the Copyright Act, 17 U.S.C. §§ 101, *et seq.* ICC validly and effectively donated, transferred, and assigned all of its interests in, and the copyrights and copyright registrations for, its Evaluation Reports and Acceptance Criteria to NES so that ES now owns these documents and their copyrights and registrations.

27.     With this action, ICC seeks a declaratory judgment that (1) in compliance with the Copyright Act, on or about January 31, 2003, ICBO validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to NES, which eventually was transformed into ES, all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

28.     In the event that this Court finds that ICC did not validly and effectively donate, transfer, and assign all right, title and interest in the Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, ICC is the owner of all right, title, and interest in and to those Evaluation Reports and Acceptance Criteria.   ICC therefore asserts a claim, in the alternative, to enjoin Defendants' widespread unlawful behavior and to recover ICC's damages attributable to Defendants' copyright infringement relating to certain Evaluation Reports and Acceptance Criteria owned by ICC.

## THE COPYRIGHT ACT

29.     "Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression…from which they can be perceived, reproduced, or otherwise communicated."  17 U.S.C. § 102(a).

30.     A copyright confers exclusive rights on its owner, including the sole ability to reproduce or distribute the copyrighted work or prepare derivative works.  *See, e.g.*, *id.* § 106.

31.     Copyright "vests initially in the author or authors of the work."  *Id.* § 201(a).

32.     An employer's authorship includes works generated by employees within the scope of their employment.  *Id.* § 101 (defining "work made for hire").

33.     If a work is registered with the U.S. Copyright Office "before or within five years after first publication of the work," then in any judicial proceedings the certificate of registration shall constitute "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  *Id.* § 410(c).

34.     The "ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law."  *Id.* § 201(d)(1)–(2).

35.     Other than by operation of law, a copyright owner may transfer its rights of ownership through a written and signed "instrument of conveyance, or a note or memorandum of the transfer." *Id.* § 204(a).

36.     Any person or entity that violates any of a copyright owner's exclusive rights infringes the copyright. *Id.* § 501.

37.     The owner of a copyright may enforce its rights against infringers by filing for an injunction and is entitled to receive actual damages and the infringer's additional profits. *Id.* §§ 502 (injunction), 504 (actual damages, profits).

38.     In certain circumstances, the owner of a copyright "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work." *Id.* § 504(c)(1).

39.     The owner of a registered copyright may seek statutory damages for infringement of any published work registered "within three months after the first publication of the work" or for "any infringement of copyright commenced" after the effective date of its registration. *Id.* § 412(2).

40.     In instances where "the court finds[] that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to no more than $150,000" per work. *Id.* § 504(c)(2).

41.     The court may award full costs, including a reasonable attorneys' fees, to the copyright owner for any published work registered "within three months after the first publication of the work" or for "any infringement of copyright commenced" after the effective date of its registration. *Id.* §§ 412, 505.

9

## FACTUAL ALLEGATIONS
### Copyright Assignment

42.     From at least 1977, ICBO and ICBO-ES regularly published Evaluation Reports and Acceptance Criteria in a monthly Serial Publication called *Research Reports and Evaluation Reports* (hereinafter "*Serial Publications*").  The *Serial Publications* were registered with the U.S. Copyright Office in the ordinary course of business.

43.     Through and following the combinations of the Legacy Organizations in 2003 described in paragraph 3, first ICC and then NES, respectively, became the lawful owner of certain copyrights previously owned by ICBO.

44.     On or about January 31, 2003, ICBO intended to and did donate, grant, transfer, assign, and convey to ICC through the Restricted Donation Agreement (**Exhibit 1**), all of ICBO's right, title, and interest in, and its copyrights and copyright registrations for, its Evaluation Reports (also called Research Reports) and Acceptance Criteria.

45.     On or about January 31, 2003, ICBO intended that the entity that became ES would assume all the evaluation activities then conducted by ICBO and the other Legacy Organizations.

46.     On or about January 31, 2003, ICC donated and assigned all right, title, and interest in and to its copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria to non-profit NES.

47.     The intent for ICC to donate and assign ICC's right, title, and interest in and to the copyrights and copyright registrations for its Evaluation Reports and Acceptance Criteria authored or created by the Legacy Organizations to the entity that became ES is evidenced by the information statement and other materials distributed to the various members of the Legacy Organizations.  True and correct copies of the Information Statement distributed to members of the Legacy Organizations, along with a letter from John Noose to the newly formed ICC-ES

Evaluation Committee (dated March 7, 2003) regarding committee orientation, are attached as **Exhibit 3**.

48.     Separately, on or about January 31, 2003, certain Legacy Organizations that previously conducted and issued Evaluation Reports and Acceptance Criteria each donated and assigned their Evaluation Reports and Acceptance Criteria and the copyrights thereto to NES.

49.     On or about May 1, 2003, NES changed its name to ICC Evaluation Services, Inc. ICC Evaluation Services, Inc. was an Illinois tax exempt organization pursuant to Section 501(c)(4) of the Internal Revenue Code.   A true and correct copy of NES's Articles of Incorporation and the amendments thereto are attached as **Exhibit 4**.

50.     On or about January 14, 2009, ICC Evaluation Services, Inc. changed its corporate name to ICC Evaluation Service, Inc.   A true and correct copy of the Articles of Amendment effectuating the name change is attached as **Exhibit 5**.

51.     On or about July 2010, ICC Evaluation Service, Inc. transferred "all intellectual property, registered and unregistered, patents, inventions, trade secrets, processes, proprietary rights, proprietary knowledge, know-how, design, archives, technology, software, URLs, domain names, web sites including content and coding, trademarks, names, service marks, trade names, copyrights, symbols, logos, drawings, franchises and permits, and all applications therefor, registrations thereof and licenses, sublicenses or agreements in respect thereof, that Seller owns or has the right to use or to which Seller is a party and all filings, registrations or issuances of any of the foregoing with or by any federal, state, local or foreign Governmental Authority and all related goodwill" to ES Acquisition Co., LLC.   A true and correct copy of the Asset Purchase Agreement is attached as **Exhibit 6** at Section 1.1(e).

52.     After transferring its intellectual property to ES Acquisition Co., LLC, ICC Evaluation Service, Inc. changed its corporate name to ICC ES Holdings, Inc.  On or about July 11, 2015, ICC-ES Holdings, Inc. dissolved.

53.     ES Acquisition Co., LLC was formed on or about March 9, 2010 as a Delaware Limited Liability Company.  ES Acquisition Co., LLC, was organized "exclusively to (a) lessen the burdens of Government through the performance of certain services for the benefit of federal, state or local governments in connection with the administration of building law and regulation; (b) undertake activities to further the tax-exempt purposes of ICC."  Ex. 7 Section 4.  Moreover, ES Acquisition Co., LLC was prohibited from engaging in "any activities which are not permitted for a Company that is exempt from federal income tax under section 501(c)(6) of the United States Internal Revenue Code of 1986."  Ex. 7 Section 6.  A true and correct copy of the Limited Liability Company Operating Agreement of ES Acquisition Co., LLC is attached as **Exhibit 7**.

54.     On or about August 10, 2010, ES Acquisition Co., LLC changed its corporate name to ICC Evaluation Service, LLC, the plaintiff in the Related Litigation.  A true and correct copy of the Limited Liability Company Application For Registration Certificate of Amendment is attached as **Exhibit 8**.

55.     ICC Evaluation Service, LLC, also known as ES and the plaintiff in the Related Litigation, was likewise organized "exclusively to (a) lessen the burdens of Government through the performance of certain services for the benefit of federal, state or local governments in connection with the administration of building law and regulation; (b) undertake activities to further the tax-exempt purposes of ICC."  Ex. 9 Section 4.  Moreover, ES was prohibited from engaging in "any activities which are not permitted for a Company that is exempt from federal income tax under section 501(c)(6) of the United States Internal Revenue Code of 1986."  Ex. 9

Section 6.  A true and correct copy of the Amended and Restated Limited Liability Company Agreement of ICC Evaluation Service, LLC is attached as **Exhibit 9**.

56.     By operation of law or by transfer or assignment, ICC owned the copyrights and copyright registrations in the Evaluation Reports and Acceptance Criteria previously owned ICBO at the time ICC assigned the copyrights and copyright registrations in ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003.

57.     As the result of ICC's intent to donate and assign and actual valid and effective donation and assignment of its right, title, and interest in, including copyrights and copyright registrations for, the Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, and the subsequent restructuring of NES described above, ES owns all interests in and the copyrights and copyright registrations to all of ICC's Evaluation Reports and Acceptance Criteria, including but not limited to the Evaluation Reports and Acceptance Criteria discussed herein in paragraph 62.  *See also* Ex. 3.

58.     The Confirmatory Assignment (**Exhibit 2**) memorialized ICC's intent to donate and assign and ICC's actual donation and assignment of ownership of the copyrights in the Evaluation Reports and Acceptance Criteria previously owned by ICC to NES on or about January 31, 2003.

59.     Defendants have reproduced and/or prepared derivatives of, in substantial and significant part, at least the following ICBO Evaluation Reports and original Acceptance Criteria, referred to collectively as the "Legacy Works" and described in more detail below:

a.     ICBO-ES Evaluation Report No. ER-3568, registration numbers TX 192-485, TX 229-194, TX 229-195, TX 236-722, or TX 361-966 and TX 2-480-713, TX 2-481-273, or TX 2-484-075;

13

b.      ICBO-ES Evaluation Report No. ER-3899, registration numbers TX 2-998-540 and TX 5-025-522;

c.      ICBO-ES Evaluation Report No. ER-3967, registration numbers TX 970-147 or TX 970-148; TX 3-378-214; TX 4-348-625; and TX 5-052-306, TX 5-061-134, or TX 5-082-194;

d.      ICBO-ES Evaluation Report No. ER-5437, registration numbers TX 4-983-880 or TX 4-983-881 and TX 5-092-977;

e.      ICBO-ES Evaluation Report No. PFC-5501, registration number TX 5-028-820;

f.      ICBO-ES Acceptance Criteria No. 11, registration number TX 2-021-904, TX 2-058-819, or TX 2-056-402;

g.      ICBO-ES Acceptance Criteria No. 118, registration numbers TX 4-328-443, TX 4-348-625, or TX 4-349-102 and TX 5-025-522 or TX 5-082-608; and

h.      ICBO-ES Acceptance Criteria for Precast Stoner Veneer, registration numbers TX 2-358-252, TX 2-484-245, or TX 2-484-074; TX 3-031-656, TX 3-067-183, or TX 3-069-835.

60.     Defendants do not own or claim to own any of the copyrighted Legacy Works.

### Copyright Infringement

61.     In the event that the Assignment was invalid, ICC was and is the copyright owner as to the Legacy Works by operation of law or by transfer or assignment and has been at all relevant times the owner of all rights and interests in the Legacy Works.  17 U.S.C. §§ 101, *et seq.*

14

62.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by reproducing, in substantial and significant part, and/or preparing derivatives of the Legacy Works, without authorization.

63.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by reproducing in their entirety copies of the Legacy Works for internal circulation without authorization.

64.     As a matter of practice and/or policy, Defendants, without authorization from ICC, reproduced copies of the Legacy Works, *inter alia*, by converting PDF files of the Legacy Works and/or works that contain language from the Legacy Works into its digital files that then were saved to Defendants' Laserfiche files or otherwise.

65.     Defendants have knowingly and willfully infringed the copyrights in the Legacy Works by distributing, and/or displaying reproductions and/or derivatives of the Legacy Works without authorization or consent, and for commercial gain.

66.     ICC has not authorized or licensed Defendants to reproduce its copyrighted Legacy Works, to prepare derivative works based upon its copyrighted Legacy Works, or to distribute copies or derivatives of the Legacy Works internally or to the public.

67.     Defendants acted willfully and/or with reckless disregard for and/or willful blindness to ICC's rights in the Legacy Works when they distributed, reproduced, prepared derivatives of and/or displayed the Legacy Works without authorization, in violation of Copyright law and Defendants' own Copyright Policy, which, for example, prohibits the creation of derivative works and the creation of copies of any copyrighted work.

68.     Upon information and belief, Defendants' Copyright Policy, adopted in November 2015, memorializes Defendants' previously unwritten policies.

69.     Defendants have used, infringed upon, distributed and otherwise profited from, and, unless enjoined by this Court, will in the future use, infringe upon, distribute, and otherwise profit from ICC's Legacy Works.

70.     As a result of Defendants' wrongful conduct, ICC has suffered damages and, unless this Court enjoins Defendants' wrongful conduct, ICC will continue to suffer damages.

### THE COPYRIGHTED WORKS

71.     On or about November 2008, ES published ES Evaluation Report No. ESR-1215 (valid from November 1, 2008 to November 1, 2009), assessing Eldorado Stone®, Eldorado Brick® and Eldorado Adobe® Veneers and Eldorado Accents, for compliance with the 2006 versions of both the International Building and International Residential Codes.

72.     ESR-1215 is based on and/or includes language from Legacy Work ICBO-ES Evaluation Report No. ER-3568.

73.     Effective February 16, March 28, April 30, or May 2, 1979, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3568 (issued February 1979), under copyright registration number TX 192-485, TX 229-194, TX 229-195, TX 236-722, or TX 361-966.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 10–14**.

74.     Effective January 25, 1989, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3568 (issued September 1988), under copyright registration number TX 2-480-713, TX 2-481-273, or TX 2-484-075.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 15–17**.

75.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation

Report No. ER-3568, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 337," "UES Evaluation Report No. 353," "UES Evaluation Report No. 377," and "UES Evaluation Report No. 386."

76.     On or about February 2013, ES published ES Evaluation Report No. ESR-1607 (valid from February 1, 2013 to February 1, 2015), assessing Western 1-Kote Exterior Stucco System, Dryvit Commercial Cement Plaster (CCP) System, Insulex Continuous Insulation Stucco System, Ashgove One-Coat Stucco System, and Sto Powerwall™ Stucco System, for compliance with the 1997 Uniform Building Code and the 2006, 2009, and 2012 versions of both the International Building and International Residential Codes.

77.     ESR-1607 is based on and/or includes language from ICBO-ES Evaluation Report No. ER-3899.

78.     Effective January 22, 1991, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3899 (issued August 1990), under copyright registration number TX 2-998-540.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 18**.

79.     Effective November 29, 1999, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-3899 (reissued August 1, 1999), under copyright registration number TX 5-025-522.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 19**.

80.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of multiple versions of ICBO-ES Evaluation Report No. ER-3899, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 382."

17

81.     On or about June 2013, ES published ES Evaluation Report No. ESR-2448 (valid

from May 1, 2013 to May 1, 2015), assessing Hebel Autoclaved Aerated Concrete (AAC) Panels

and Hebel Thin Bed Mortar for compliance with several codes, including the 2006 and 2009

versions of the International Building Code.

82.     ESR-2448 is based on and/or includes language from ICBO-ES Evaluation Report

No. PFC-5501.

83.     Effective November 29, 1999, ICBO registered with the U.S. Copyright Office its

copyright in ICBO-ES Evaluation Report No. PFC-5501 (issued June 1, 1999), under copyright

registration number TX 5-028-820.  A true and correct copy of the Certificate of Registration

issued by the Copyright Office is attached as **Exhibit 20**.

84.     Without ICC's authorization or license, Defendants have knowingly and willfully

copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation

Report No. PFC-5501, and are or have been publishing and distributing it on the Internet as "UES

Evaluation Report No. 400."

85.     On or about April 2013, ES published ES Evaluation Report No. ESR-2481 (valid

from April 1, 2013 to May 1, 2014), assessing Taperlock Reinforcing Bar Mechanical Splice

Couplers for compliance with several codes, including the 2006, 2009, and 2012 versions of the

International Building Code.

86.     ESR-2481 is based on and/or includes language from ICBO-ES Evaluation Report

No. 3967.

87.     Effective September 2, 1982, ICBO registered with the U.S. Copyright Office its

copyright in ICBO-ES Evaluation Report No. 3967 (issued June 1982), under copyright

registration number TX 970-147 or TX 970-148.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 21 and 22**.

88.     Effective August 7, 1992, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued March 1992), under copyright registration number TX 3-378-214.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 23**.

89.     Effective October 8, 1996, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued July 1, 1996), under copyright registration number TX 4-348-625.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 24**.

90.     Effective January 27 or April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. 3967 (reissued October 1, 1999), under copyright registration number TX 5-052-306, TX 5-061-134, or TX 5-082-194.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 25–27**.

91.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation Report No. ER-3967, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 319."

92.     On or about February 2012, ES published ES Evaluation Report No. ESR-2968 (valid from February 1, 2012 to March 1, 2014), assessing UltraFitDS® and AsureR® Loose-Fill Glass Fiber Insulation for compliance with several codes, including the 2009 versions of both the International Building and International Residential Codes.

93.     ESR-2968 is based on and/or includes language from ICBO-ES Evaluation Report No. ER-5437.

94.     Effective May 28, 1999, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-5437 (issued January 1, 1999), under copyright registration number TX 4-983-880 or TX 4-983-881.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 28 and 29**.

95.     Effective April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Evaluation Report No. ER-5437 (reissued January 1, 2000), under copyright registration number TX 5-092-977.  A true and correct copy of the Certificate of Registration issued by the Copyright Office is attached as **Exhibit 30**.

96.     Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Evaluation Report No. ER-5437, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 339."

97.     On or about January 2001, ICBO-ES published ICBO-ES Acceptance Criteria No. 11 for testing and evaluating cementitious exterior wall coatings for compliance with the 1997 Uniform Building Code and the 2000 International Building and International Residential Codes.

98.     ES Acceptance Criteria No. 11 is based on and/or includes language from ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings.

99.     Effective March 19, 1987, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings (approved October 1986), under copyright registration number TX 2-021-904, TX 2-058-819, or TX 2-056-

402.   True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 31–33**.

100.   Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of Legacy Work ICBO-ES Acceptance Criteria for Cementitious Exterior Wall Coatings, and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 382 Revised 11/30/2015."

101.   On or about December 2007, ES published ES Acceptance Criteria No. 51 for testing and evaluating precast stone veneer for compliance with the 2006 International Building Code, 2006 International Residential Code, 1999 National Building Code, and 1997 Uniform Building Code.

102.   ES Acceptance Criteria No. 51 is based on and/or includes language from ICBO-ES Acceptance Criteria for Precast Stoner Veneer.

103.   On or about June 1988, ICBO-ES published ICBO-ES Acceptance Criteria for Precast Stone Veneer for testing and evaluating precast stone veneer for compliance with Chapter 30 of the Uniform Building Code.

104.   Effective August 17, 1988 or January 25, 1989, ICBO registered with the Copyright Office its copyright in ICBO-ES Acceptance Criteria for Precast Stone Veneer (approved June 1988), under copyright registration number TX 2-358-252, TX 2-484-245, or TX 2-484-074. True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 34–36**.

105.   Effective March 20, April 17, or May 28, 1991, ICBO registered with the Copyright Office its copyright in ICBO-ES Acceptance Criteria for Precast Stone Veneer (corrected February 1991), under copyright registration number TX 3-031-656, TX 3-067-183,

21

or TX 3-069-835. True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 37–39**.

106.    Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Acceptance Criteria for Precast Stone Veneer and are or have been publishing and distributing it on the Internet as "UES Evaluation Report No. 337 Revised 11/24/2015," "UES Evaluation Report No. 353 Revised 11/24/2015," "UES Evaluation Report No. 377 Revised 11/24/2015," and "UES Evaluation Report No. 386 Revised 11/24/2015."

107.    In 2013, ES authored, but never published, Proposed Acceptance Criteria Methods of Shear Transfer Which are Alternatives to Welded Stud Shear Connectors AC 453.

108.    ES Proposed Acceptance Criteria No. 453 is based on and/or includes language from ICBO-ES Acceptance Criteria No. 118.

109.    Effective August 19, October 7, or October 8, 1996, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria No. 118 (approved July 1996), under copyright registration number TX 4-328-443, TX 4-348-625, or TX 4-349-102.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 40, 24, 41**.

110.    Effective November 29, 1999 or April 7, 2000, ICBO registered with the U.S. Copyright Office its copyright in ICBO-ES Acceptance Criteria No. 118 (editorially revised August 1999), under copyright registration number TX 5-025-522 or TX 5-082-608.  True and correct copies of the Certificates of Registration issued by the Copyright Office are attached as **Exhibits 19 and 42**.

22

111.    Without ICC's authorization or license, Defendants have knowingly and willfully copied and/or prepared derivative works using substantial portions of ICBO-ES Acceptance Criteria No. 118, and are or have been publishing and distributing it on the Internet as "IAPMO-ES Evaluation Criteria 023."

### COUNT I
### Declaratory Judgment as to Validity of Assignments Under the Copyright Act
### 17 U.S.C. § 204

112.    Plaintiff ICC repeats and re-alleges the allegations contained in paragraphs 1–8, 10–27, and 29–60, as if set forth herein.

113.    In the Related Litigation, Defendants have asserted that ES is not the owner of the copyrights in Legacy Works identified in paragraph 59 above because certain copyright registrations attached to ES's Second Amended Complaint show ICBO as the author and copyright claimant.

114.    In the Related Litigation, Defendants have claimed that any alleged donation or transfer or assignment eventually resulting in ES as the beneficial owner of the copyrights in these Legacy Works (as evidenced, *e.g.*, the Legacy Organizations' intent, Restricted Donation Agreement, and Confirmatory Assignment), is invalid and therefore not effective to transfer all right, title and interest in and to the Evaluation Reports and Acceptance Criteria at issue. Defendants therefore argue that ES is not the owner of the copyrights in these Legacy Works.

115.    There is no factual or legal support or basis for Defendants' challenge to the assignments and transfers from ICBO to ICC or from ICC to NES, which eventually was transformed into ES.

116.    ICC intended to donate and assign, and did donate and assign all right, title, and interest in and to all of ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003.

117.    ICC memorialized its intention to donate and assign, and the actual donation and assignment of, all right, title and interest in and to all of ICC's Evaluation Reports and Acceptance Criteria to NES, in the written and executed Confirmatory Assignment.

118.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., International Code Council, Inc. ("ICC") requests that this Court enter a declaratory judgment that (1) in compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. ("ICBO") validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC; and (2) in compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO.

## COUNT II
## Violation of the Copyright Act, 17 U.S.C. §§ 101, et seq.

119.    Plaintiff ICC repeats and re-alleges each and every allegation contained in paragraphs 1–7, 9–14, 17, 20– 25, 28–42, 44, and 59–1111, as if fully set forth herein.

120.    In the alternative, if this Court finds that ICC did not validly and effectively donate, transfer, and assign all right, title, and interest in and to ICC's Evaluation Reports and Acceptance Criteria to NES on or about January 31, 2003, ICC is the owner of the copyrights in those Legacy Works including those identified in paragraph 59 above, and maintains exclusive rights, *inter alia*, to distribute and reproduce the Legacy Works and create works from those Legacy Works.

121.    Defendants have infringed and will continue to infringe ICC's copyrights in the Legacy Works by copying, producing, distributing, and placing in the market products that are, in substantial part, copies of, or derived from, ICC's copyrighted Legacy Works, without ICC's permission or license.

122.    In these circumstances, the Copyright Act entitles ICC to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them from engaging in any present or future acts in violation of the copyright laws.

123.    The Copyright Act further entitles ICC to recover from Defendants actual damages it has sustained, and any gains, profits and advantages obtained by Defendants as a result of their acts of infringement alleged above.

124.    The Copyright Act also entitles ICC to statutory damages in lieu of actual damages, plus attorneys' fees, at least as to Defendants' infringement of Legacy Works ICBO-ES Evaluation Report Nos. ER-3568, ER-3899, ER-3967, ER-5437, and PFC-5501, and ICBO-ES Acceptance Criteria Nos. 11, 118, and ICBO-ES Acceptance Criteria for Precast Stoner Veneer.

## RELIEF REQUESTED

WHEREFORE, Plaintiff International Code Council, Inc. requests judgment against Defendants International Association of Plumbing and Mechanical Officials, Inc. and the IAPMO Evaluation Service, LLC and seeks relief, as follows:

A.     That judgment be entered for ICC and against Defendants on Count I; and

B.     That this Court issue a declaratory judgment that:

i.   In compliance with the Copyright Act, on or about January 31, 2003, International Conference of Building Officials, Inc. validly and effectively donated and assigned, *inter alia*, all of its right, title, and interest, including copyright and copyright registrations, in and to its Evaluation Reports, which were also called Research Reports, and its Acceptance Criteria to ICC;

ii.  In compliance with the Copyright Act and as memorialized in a written Confirmatory Assignment dated February 9, 2018, on or about January 31, 2003, ICC validly and effectively donated and assigned to National Evaluation Services, Inc. ("NES"), which eventually was transformed into ICC Evaluation Service, LLC ("ES"), all of ICC's right, title, and interest, including copyright and copyright registrations, in and to all of ICC's Evaluation Reports and Acceptance Criteria, including all right, title, and interest in and to the Evaluation Reports and Acceptance Criteria that previously were donated and assigned to ICC by ICBO, including those identified in paragraph 59 above; and

C.     That this Court grant any such other and further relief as it deems just and proper.

In the alternative, if the Court denies the relief sought in Paragraphs A–C, Plaintiff International Code Council, Inc. requests judgment against Defendants International Association of Plumbing and Mechanical Officials, Inc. and the IAPMO Evaluation Service, LLC and seeks relief, as follows:

D.      That judgment be entered for ICC and against Defendants on Count II;

E.      That this Court find that Defendants infringed ICC's copyrights in the Legacy Works identified in paragraph 59 above;

F.      That this Court find that Defendants' infringement of ICC's copyrighted Legacy Works was willful;

G.      That this Court find that Defendants will continue to infringe ICC's copyrights in the Legacy Works unless enjoined from doing so;

H.      That Defendants, their officers, directors, agents, employees, affiliates, subsidiaries, and all other persons acting in concert with them, be permanently enjoined from directly or indirectly infringing ICC's copyrights in the Legacy Works, and any other works authored by ICC; from marketing, offering, selling, disposing of, licensing, leasing, transferring, displacing, advertising, reproducing, developing, or manufacturing any works derived or copied from the Legacy Works, or any other works authored by ICC; and, from participating or assisting in any such activity;

I.      That Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for their other violations of law;

J.      That ICC be awarded its actual damages and any profits attributable to Defendants' infringements of ICC's copyrights in the Legacy Works, and, where applicable, statutory damages for infringements of ICC's copyrighted Legacy Works;

27

K.      That Defendants be required to deliver for destruction, all copies, reproductions, or derivative works of offending works produced by Defendants based on the Legacy Works, all advertising and other promotional material for Defendants' products based on the Legacy Works or infringing copies of them, and all artwork and other promotional materials in Defendants' possession or custody or under their control relating to the copying or reproduction in whole or in part of the Legacy Works;

L.      That Defendants be required to delete permanently from Defendants' computers and information technology systems all electronic copies of the offending works;

M.      That Defendants be required to delete permanently, from any website that they own or control, all copies or reproductions of the offending works;

N.      That ICC be awarded reasonable attorneys' fees and costs incurred in connection with this action, including, but not limited to, reasonable attorneys' fees and costs incurred in connection with Defendants' infringement of ICC's copyrights;

O.      That a jury hear ICC's claims; and,

P.      That this Court grant any such other and further relief as it deems just and proper.

Dated: April 3, 2018

Respectfully submitted,

/s/ J. Kevin Fee
J. Kevin Fee (D.C. Bar No. 494016)
James Hamilton (D.C. Bar No. 108928)
Raechel Keay Kummer (D.C. Bar No. 991999)
Clara Kollm (D.C. Bar No. 1029841)
Jane W. Wise (D.C. Bar No. 1027769)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
(202) 739-3000
(202) 739-3001 (Facsimile)
kevin.fee@morganlewis.com
james.hamilton@morganlewis.com
raechel.kummer@morganlewis.com
clara.kolm@morganlewis.com
jane.wise@morganlewis.com

*Attorneys for Plaintiff*